IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ERICTAVIA DAVIS, | * |
| Plaintiff, | * |
| v. | * |
|  | *   Civil No. 25-1785-BAH |
| SCREENING REPORTS, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Erictavia Davis ("Plaintiff") brings this putative class action lawsuit against Screening Reports, Inc. ("SRI") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. (Counts 1 and 2); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Commercial Law ("CL") §§ 13-301 et seq. (Count 3); and the Maryland Consumer Credit Reporting Agencies Act ("MCCRAA"), CL §§ 14-1201 et seq. (Count 4). ECF 1, at 14–20 (complaint). Pending before the Court is SRI's motion to dismiss Counts 3 and 4 of the complaint. ECF 21 (the "Motion"). Plaintiff filed an opposition, ECF 24, and SRI filed a reply, ECF 25. All filings include memoranda of law.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, SRI's Motion is **GRANTED** and Counts 3 and 4 are **DISMISSED** without prejudice.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

I.   **BACKGROUND**[2]

SRI is a "national provider of background screening services" that, among other things, provides background screening reports to landlords regarding tenant applicants. ECF 1, at 5 ¶¶ 16–17. In February of 2024, Plaintiff applied "for an apartment at Chesapeake Commons Apartments ("Chesapeake Commons") in Baltimore, Maryland." *Id.* at 6 ¶ 27. "Chesapeake Commons informed Plaintiff that [it] require[s] all applicants to consent to a tenant screening report," so "Plaintiff provided her name, address, date of birth, and Social Security Number" to Chesapeake Commons for the screening report. *Id.* at 6–7 ¶¶ 29–30. Plaintiff's tenant screening report was completed by SRI and returned to Chesapeake Commons on February 13, 2024. *Id.* at 7 ¶¶ 31–32. Plaintiff alleges that the report "was inaccurate, incomplete, and materially misleading" because it noted that Plaintiff was involved in four eviction court proceedings, including three that were "dismissed" and one "with a case number of D-085-LT-21-015562 and a date of June 4, 2021—list[ing] the disposition as 'eviction.'" *Id.* ¶¶ 33–34. All four cases were also notated with "red 'X' marks." *Id.* ¶ 34.

Plaintiff claims that the case identified in the report as having a disposition of eviction "never actually resulted in an eviction," but rather that the eviction court "grant[ed] the landlord's judgment of possession," but the landlord then "never received a warrant of restitution, and a sheriff never visited Plaintiff's property." *Id.* ¶ 35. According to Plaintiff, the reason the eviction never occurred is that "the landlord filed the action during Maryland's COVID-19 moratorium on residential evictions for non-payment of rent" so "the case took nearly five months to conclude,"

---

[2] In assessing standing at the motion to dismiss stage, the court "accept[s] all allegations in the complaint as true and construe[s] those allegations 'in the light most favorable to the plaintiff.'" *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

2

and during that time "Plaintiff moved out," which made "eviction a literal impossibility." *Id.* at 8 ¶ 36.

Plaintiff alleges that the report "led the landlord [at Chesapeake Commons] to believe that Plaintiff had been evicted by a previous landlord." *Id.* ¶ 38. Further, she alleges that "the inclusion of the dismissed cases with a red 'X' mark is materially misleading" because "a reasonable landlord would [] infer from [SRI]'s report that these cases represent a red flag against Plaintiff." *Id.* ¶ 40. Plaintiff claims that "Chesapeake Commons denied [her] application" "[a]s a result of [SRI]'s inaccurate and misleading screening report" which "threaten[ed] her housing security." *Id.* ¶ 41.

Plaintiff disputed the alleged inaccuracies contained in the report directly to SRI and "on or around July 24, 2024," SRI responded that it would not change the report, attaching "a screenshot from Maryland Judiciary Case Search's website" as evidence of the "court records used to make [its] decision." *Id.* at 9 ¶¶ 42–44 (internal quotation marks omitted). Plaintiff asserts that the screenshot from Maryland Judiciary Case Search "only reflect[ed] a 'Landlord Tenant Disposition,'" and not an eviction. *Id.* ¶ 44. In August of 2024, "Plaintiff again disputed the information with [SRI] . . . advising . . . that she [was] never evicted" and "attached the full court records to that effect." *Id.* at 10 ¶ 45. SRI responded "[o]n or about September 5, 2024" and "refused to correct [its] reporting," allegedly stating, "this is the disposition that is shown on the court site regarding this court case" which was "showing as an eviction on the report" because "the judgement [sic] of this case number was in favor of the Landlord." *Id.* ¶ 47 (internal quotation marks omitted). Further, SRI advised that the red "X" marks on the report were "not recommendations for denial but are indications of what items in the report failed the communities [sic] qualifying criteria." *Id.* ¶ 49 (internal quotation marks omitted) (alteration in complaint).

3

Plaintiff alleges four causes of action against SRI, including violations of (1) § 1681e(b) of the FCRA for "failing to follow reasonable procedures to assure maximum accuracy of eviction record information" in tenant screening reports, ECF 1, at 15 ¶ 63 (Count 1); (2) § 1681i(a) of the FCRA for "fail[ing] to perform a reasonable reinvestigation of [] disputed information," *id.* at 15–16 ¶ 70 (Count 2); (3) the MCPA based on alleged "unfair or deceptive trade practices," *id.* at 16 ¶ 76 (Count 3); and (4) the MCCRAA for "failing to register, file a bond, or otherwise prove [SRI's] financial viability," *id.* at 18 ¶ 85 (Count 4). As noted, SRI seeks to dismiss only Counts 3 and 4 of Plaintiff's complaint. *See* ECF 21.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of standing, which relate to subject matter jurisdiction. *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Article III gives federal courts jurisdiction only over 'cases and controversies,' U.S. Const. art. III, § 2, cl. 1, and the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–76 (1982)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

"The fact that a suit is a class action 'adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Hall v. Camden Dev., Inc.*, Civ. No. DKC-25-366, 2025

4

WL 2720222, at *4 (D. Md. Sept. 24, 2025) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)) (internal quotation marks omitted). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

## III. ANALYSIS

SRI moves to dismiss Plaintiff's claim under the MCPA (Count 3) arguing that Plaintiff "fails to plead any facts to satisfy the injury requirement needed to confer standing," or, in the alternative, pursuant to Rule 12(b)(6) "for failure to state a claim under the MCPA." ECF 21-1, at 4. SRI also moves to dismiss Plaintiff's claim under the MCCRAA (Count 4) because Plaintiff failed to plead actual damages, or alternatively, because Plaintiff cannot recover damages due to the economic loss doctrine. *Id.* at 12–13.

### A. Plaintiff's Claims Under the MCCRAA and MCPA

The MCCRAA requires a consumer reporting agency[3] to register with the State and file a surety bond or irrevocable letter of credit annually. CL §§ 14-1215 ("A consumer reporting agency shall register each year with the Commissioner [of Financial Regulation of the Maryland Department of Labor] under this subtitle."); 14-1217(a) (requiring "a consumer reporting agency" to "file a surety bond or irrevocable letter of credit" with the Commissioner unless an exemption is granted). The statute provides a private right of action to consumers when a consumer reporting agency either willfully, § 14-1221(a), or negligently, § 14-1221(b), fails to comply with "any requirement" under the MCCRAA, which can result in recovery of actual damages and attorneys'

---

[3] A consumer reporting agency is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" CL § 14-1201(f)(1).

fees and costs. *Id.* § 14-1221(a)–(b). Punitive damages, however, are only recoverable for willful failure to comply. *Id.* § 14-1221(a).

Under the MCPA, any entity doing business in Maryland is prohibited from engaging in any "unfair, abusive, or deceptive trade practices," CL § 13-301, including, as relevant to Plaintiff's complaint, making a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," CL § 13-301(1), and failing "to state a material fact if the failure deceives or tends to deceive," CL § 13-301(3). The MCPA also includes a private right of action, but it "is limited to recovery for 'injury or loss sustained.'" *Shadrin v. Hunter Warfield Inc.*, Civ. No. ELH-22-3228, 2023 WL 4664037, at *24 (D. Md. July 19, 2023) (quoting CL § 13–408).

As to the relevant claims, Plaintiff alleges that SRI is a consumer reporting agency that failed to register as required and similarly failed file the requisite surety bond in apparent violation of the MCCRAA. ECF 1, at 3 ¶ 9. Count 3 alleges a violation of the MCPA based on SRI's alleged failure to register and file a bond, whereby Plaintiff asserts that SRI's noncompliance with state requirements rendered its "consumer reports and dispute responses" illegitimate. *Id.* at 17 ¶ 78. Plaintiff contends that SRI mislead and deceived consumers into believing its reports were legitimate in violation of the law by "failing to state the material fact to either landlords or tenants that it never registered or filed a bond." *Id.* ¶ 80. Plaintiff asserts SRI's alleged acts of misleading and deception constitute an "unfair and deceptive trade practice" in violation of the MCPA. *Id.* at 16 ¶ 77. Based on this violation, Plaintiff alleges she and the putative class "suffered cognizable and legally compensable injury or loss, including but not limited to payment of application fees that were not owed." *Id.* at 17 ¶ 81. Plaintiff also alleges that the violation resulted in the denial

6

of Plaintiff's application to Chesapeake Commons, putting her "on the brink of homelessness." *Id.* at 2 ¶ 6.[4]

As noted, Plaintiff alleges in Count 4 that SRI has violated the MCCRAA "by failing to register, file a bond, or otherwise prove their financial viability." *Id.* at 18 ¶ 85. Plaintiff claims that SRI's failure to register and its alleged false statement that it was registered caused her and the putative class actual injury, "including the payment of application fees and the continued publication of false and defamatory information as part of the tenant screening process, damage to reputation, embarrassment, and humiliation." *Id.* ¶ 86. Plaintiff alleges that such violations were willful or negligent. *Id.* ¶¶ 87–88.

### B. As Pled, Plaintiff Lacks Standing to Bring Her MCPA and MCCRAA Claims

SRI moves to dismiss Plaintiff's MCPA claim (Count 3) for lack of standing. ECF 21-1, at 7–8. Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "As the party seeking to invoke federal jurisdiction, Plaintiff[] bear[s] the burden of establishing standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 121-269(MSN)(JFA), 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the

---

[4] Though Plaintiff did not provide details about the denial of her housing application in her complaint, ECF 1, at 17 ¶ 81, she addresses it in her reply memorandum, ECF 24, at 12 (explaining that Plaintiff's "concrete and particularized injuries" include "the denial of her housing application and payment of an application fee"). Ordinarily, "an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). However, because Plaintiff "restates each of the preceding allegations" in her claim for relief, the Court will consider the injury as part of the harm Plaintiff alleges resulted from SRI's violation of the MCPA.

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc.*, 528 U.S. at 185.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A]fter *Spokeo*, a plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (citing *Spokeo*, 578 U.S. at 341). "To satisfy standing's causation requirement, the alleged injury must be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (alterations in original) (quoting *Lujan*, 504 U.S. at 560). A plaintiff must show a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The causal connection must not be excessively attenuated. *Id.* at 560–61.

Also important here, where SRI concedes standing as to Plaintiff's first two counts, "standing is not dispensed in gross." *Lewis*, 518 U.S. at 358 n.6. Rather, "'a plaintiff must demonstrate standing for each claim he seeks to press' and '"for each form of relief' that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Plaintiff describes the alleged violation of the MCPA as SRI's use of "false or misleading statements or representations with the capacity, tendency, or effect of misleading consumers, in that its consumer reports and dispute responses purported to be legitimate, when they were not, by reason of [SRI]'s lack of the mandatory registration and bond." ECF 1, at 17 ¶ 78. As to Count

4, she alleges that she suffered "real and actual harm and injury, including the payment of application fees and the continued publication of false and defamatory information as part of the tenant screening process, damage to reputation, embarrassment, and humiliation." *Id.* at 18 ¶ 86. SRI argues that "Plaintiff fails to show how her interest in SRI's registration and bonding status is 'personal' and 'specific,' or how she was affected in a way different from the public generally" given that "SRI's lack of a of license or bond would have no bearing on the contents or quality of its report on Plaintiff." ECF 21-1, at 5. Plaintiff counters that SRI's failure to register or post a bond was not shared with "Chesapeake Commons, which, in reliance on [SRI's] tenant screening report, denied [] Plaintiff's housing application, causing her housing-related injury." ECF 24, at 13. The Court agrees with SRI and finds that Plaintiff has failed to allege an injury-in-fact and, even assuming that she did, Plaintiff fails to tie those alleged injuries to the allegedly unlawful conduct outlined in Counts 3 and 4.

As for the alleged "payment of application fees that were not owed," ECF 1, at 17 ¶ 81, even assuming application fees were paid, it bears noting that Plaintiff does not allege that she actually paid any fees to SRI.[5] Instead, she claims that she provided her "name, address, date of

---

[5] The Court notes that Plaintiff's allegations related to the payment of an application are extremely vague and may merit dismissal on their own. Plaintiff asserts that she paid "application fees that were not owed," ECF 1, at 17 ¶ 81, but her complaint is devoid of any facts surrounding the circumstances of the alleged payment. For example, in the recitation of factual allegations underlying Plaintiff's complaint, she does not state that Chesapeake Commons charged a fee as part of the application process, how much the fee was, or when she paid the fee. Instead, she merely states that she "applied for an apartment at Chesapeake Commons[.]" *Id.* at 6 ¶ 27. In detailing her individual claims, she alleges that she paid "application fees that were not owed, *id.* at 17 ¶ 81, and later notes "the payment of application fees," *id.* at 18 ¶ 86. However, the Court is left to assume these fees were paid to Chesapeake Commons as Plaintiff is explicit in noting that "the landlord procured a tenant screening report from [SRI]," *id.* at 2 ¶ 6, and in similarly alleging that SRI "sells consumer reports, also called . . . tenant screening reports . . . to *landlords*," *id.* at 5 ¶ 16 (emphasis added). Without any factual content to support her vague assertions about an application fee, Plaintiff fails to meet the minimum pleading standards.

9

birth, and Social Security Number" to Chesapeake Commons, who in turn ordered a tenant screening report from SRI. *Id.* at 7 ¶ 30–31. Plaintiff is correct that the loss of the application fee, even if negligible, could satisfy the requirement for an injury that is redressable through financial damages. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (explaining that "monetary harms" "readily qualify as injuries under Article III"). However, Plaintiff fails to connect the payment of the application fee to Chesapeake Commons' use of SRI. Thus, Plaintiff fails to articulate how the fact that SRI may have lacked required licensure (or falsely claimed to Chesapeake Commons that it had it) resulted in an injury to Plaintiff as any application fee was likely owed to Chesapeake Commons regardless of the provider Chesapeake Commons chose to perform the tenant screen. *See Zambali v. Shulman Rogers, P.A.*, Civ. No. 23-03194-SAG, 2024 WL 3161590, at *6 (D. Md. June 25, 2024) (noting that when a tenant "still owed a rental debt to his landlord," that landlord's failure to secure a license before collecting rent did not constitute an injury). In that sense, Plaintiff essentially alleges mere statutory violations, which do not amount to concrete harm to establish an injury in fact. *TransUnion LLC*, 594 U.S. at 413; *see also Edmondson*, 344 F.R.D. at 76–77.[6]

Dismissal of the challenged claims is also warranted because Plaintiff fails to tie any claimed injuries to the alleged violations of the MCCRAA and MCPA. Though Plaintiff asserts significant hardship from the denial of her housing application, including near homelessness, she

---

[6] SRI also challenged Plaintiff's claim of "emotional distress," ECF 21-1, at 6, however Plaintiff later clarified that she is not seeking damages for emotional distress, *see* ECF 24, at 13. SRI also contends that Plaintiff has failed to plead "how she sustained actual damages, reputational damage, [and] humiliation." ECF 21-1, at 8. However, Plaintiff does not appear to allege that she suffered reputational damage based on SRI's MCPA violation, see ECF 1, at 17 ¶ 81, and Plaintiff's reply memorandum concedes as much, *see* ECF 24, at 12 (identifying Plaintiff's injuries resulting from SRI's alleged MCPA violation as "the denial of her housing application and payment of an application fee").

fails to connect that alleged injury to SRI's alleged failure to post a bond or register under the MCCRAA, or its purportedly false claim that it had done so. At best, Plaintiff articulates that Chesapeake Commons—not Plaintiff—may have relied on SRI's purportedly inaccurate claim that it was registered and licensed, and thus Plaintiff fails to allege her own reliance sufficient to connect the alleged harms she suffered to the conduct of SRI as alleged in Counts 3 and 4. Relatedly, she fails to allege any connection between SRI's failure to register (or its allegedly false claim that it was registered) and Chesapeake Commons' ultimate denial of her housing application which she contends resulted in an unquestionably difficult living situation. ECF 1, at 2 ¶ 6 (alleging that "[a]s a result" of the denial of her application by Chesapeake Commons, "Plaintiff had to resort to sleeping on couches and living with family members to avoid sleeping on the street").

Specific to Count 3, Plaintiff fails to allege reliance on any specific misrepresentation or omission by SRI made to Plaintiff. An MCPA claim "must plausibly aver that the defendant engaged in an unfair or deceptive practice or misrepresentation *on which the plaintiff relied*, and which caused actual injury" in order to survive dismissal. *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 594 (D. Md. 2024) (citing *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015)) (emphasis added). Plaintiff fails articulate any deceptive information shared by SRI beyond the bare allegation that SRI "purported to be legitimate, when they were not." ECF 1, at 17 ¶ 78. Assuming this is an effort to allege an active misrepresentation, Plaintiff never alleges that SRI claimed that it was registered and bonded, much less that such a "misrepresentation substantially induce[d her]choice" to apply for the apartment. *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011). Plaintiff similarly does not allege that she applied to Chesapeake Commons and consented

11

to a tenant screening report based on SRI's representation that it was licensed and bonded. Plaintiff does not even allege that she was aware that a tenant screening report would be required *at the time* of her application and payment of a fee to Chesapeake Commons or proclaim knowledge of what entity would complete it. ECF 1, at 6–7 ¶¶ 27, 29–30. Even construing her allegation that SRI "fail[ed] to state the material fact to either landlords or tenants that it never registered or filed a bond with the State of Maryland," *id.* at 17 ¶ 80, as one alleging an *omission* by SRI sufficient to make an MCPA claim, Plaintiff still fails to claim that she would not have applied for the apartment "had [SRI] disclosed the omitted information." *Mitchell Living Tr.*, 822 F. Supp. 2d at 535. Plaintiff fails to allege a cognizable violation of the MCPA.[7]

## C. Plaintiff's Request for Leave to Amend

Plaintiff asserts in her opposition that if any portion of her complaint is dismissed, she should be granted leave to amend. ECF 24, at 21–22. Ordinarily, requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (finding that

---

[7] SRI also alternatively moved to dismiss Plaintiff's MCPA claim (Count 3) pursuant to Rule 12(b)(6), arguing that Plaintiff did not plead particularized facts as required under Federal Rule of Civil Procedure 9(b). *See* ECF 21-1, at 10–11. Plaintiff counters that the heightened pleading standard of Rule 9(b) does not apply because her MCPA claim is not based in fraud. ECF 24, at 14–15. Claims that sound in fraud under the MCPA are subject to the heightened pleading requirements of Rule 9(b). *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009). However, a party can allege an unfair and deceptive trade practice under sections other than § 13-301(9) of the MCPA "'without replicating a claim for common-law fraud'" and implicating the heightened pleading requirements of Rule 9(b). *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 478 (D. Md. 2022) (quoting *McCormick v. Medtronic, Inc.*, 101 A.3d 467, 493–94 (Md. App. 2014)), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023). Here, Plaintiff's MCPA claim is grounded in Sections 13-301(1) and 13-301(3) of the MCPA, ECF 1, at 16–17 ¶¶ 77–80, arguably obviating the need to satisfy Rule 9(b)'s heightened pleading standard. *See McCormick*, 101 A.3d at 494 (explaining that the heightened pleading standard does not apply to Sections 13-301(1) or 13-301(3) of the MCPA). Given that the Court is dismissing Counts 3 and 4 on standing grounds, it need not address this issue here.

a motion for leave to amend was "never properly made" where the plaintiffs "requested leave to amend only in a footnote of their response to defendants' motion to dismiss"). SRI opposes amendment of the complaint with respect to Plaintiff's MCPA claim. ECF 25, at 5. The Court makes no findings related to the viability of re-tooled MCPA or MCCRAA claims and dismisses these Counts without prejudice. As such, the Court finds no reason to evaluate whether leave to amend is appropriate at this time but notes that Plaintiff is entitled to seek whatever relief she believes is due.

## IV. CONCLUSION

For the foregoing reasons, Defendant Screening Reports Inc.'s motion to dismiss is GRANTED and Counts 3 and 4 of will be dismissed without prejudice. Defendant is to file an answer to the remaining counts within twenty-eight (28) days.

A separate implementing Order will issue.

Dated: December 11, 2025

/s/
Brendan A. Hurson
United States District Judge